******************************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# TIMOTHY MARTIN *v*. TODD ARTHURS COMPANY, INC.
## (AC 46009)

Elgo, Moll and Keller, Js.

*Syllabus*

The plaintiff sought to recover damages from the defendant, a business selling heating, ventilation and air conditioning equipment, in connection with the defendant's sale of allegedly defective equipment. The plaintiff commenced an action, alleging, inter alia, breach of contract. The defendant filed a request to revise, and the plaintiff revised his complaint. The defendant thereafter filed a motion to dismiss based on a lack of subject matter jurisdiction due to a forum selection clause contained in the underlying contract. The trial court, noting that the forum selection clause implicated personal jurisdiction and not subject matter jurisdiction, denied the motion to dismiss, both as untimely and because the defendant waived the right to file a motion based on lack of personal jurisdiction when it filed a request to revise. The parties engaged in settlement negotiations, both written and oral, including an offer by the plaintiff that the defendant could take possession of the equipment if it chose. The defendant filed an offer of compromise with the court pursuant to statute (§ 52-193) and the rule of practice (§ 17-11). The plaintiff emailed the defendant's counsel to communicate that he agreed on the settlement amount contained in the offer of compromise and the defendant's counsel replied that she would send the plaintiff a draft settlement agreement. Prior to the receipt of the draft settlement agreement, the plaintiff emailed the defendant's counsel that he had disposed of the equipment. Thereafter the defendant withdrew the offer of compromise, and the plaintiff objected and filed a motion with the court to compel the settlement. The trial court granted the motion to enforce the settlement agreement, finding that the defendant did not condition its offer to settle upon the return of the equipment. On the defendant's appeal to this court, *held*:

1. The trial court erred in granting the plaintiff's motion to enforce the settlement agreement as the parties had not reached a binding and enforceable contract: the parties were engaged in ongoing negotiations regarding the terms of the settlement agreement but the terms of the agreement had not been finalized, as the plaintiff created an outstanding offer regarding the possession of the equipment, and he did not revoke that offer prior to unilaterally disposing of the equipment before the agreement had been completed, memorialized or signed by either party; accordingly, this court reversed the judgment of the trial court and remanded the case for further proceedings in accordance with its opinion.

2. This court declined to review the defendant's unpreserved claim that the trial court abused its discretion in declining to enforce a forum selection clause in the contract after it determined that the defendant's motion to dismiss based on a lack of personal jurisdiction was both untimely and that the defendant had waived its ability to contest personal jurisdiction; the defendant did not challenging the court's rulings on timeliness or waiver on appeal, and it failed to distinctly raise its claim before the trial court that the court should have conducted an analysis to determine whether the forum selection clause was reasonable and gave effect to the parties' expectations prior to denying the motion.

Argued November 15, 2023—officially released June 4, 2024

*Procedural History*

Action to recover damages for, inter alia, breach of contract, and for other relief, brought to the Superior Court in the judicial district of Hartford, where the court, *Rosen, J.*, denied the defendant's motion to dismiss; thereafter, the court, *Rosen, J.*, granted the plaintiff's motion to enforce a settlement agreement and rendered judgment thereon, from which the defendant appealed to this court. *Reversed in part*; *further proceedings.*

*Jeffrey J. Mirman*, for the appellant (defendant).

*Opinion*

ELGO, J. The defendant, Todd Arthurs Company, Inc., doing business as Alpine Home Air Products, appeals from the judgment of the trial court granting a motion to enforce a settlement agreement between it and the self-represented plaintiff, Timothy Martin, and denying its motion to dismiss based on a lack of personal jurisdiction.[1] On appeal, the defendant claims that (1) the court incorrectly determined that the parties reached an enforceable settlement agreement, and (2) the court abused its discretion in declining to enforce a forum selection clause when it denied the defendant's motion

---

[1] The plaintiff has not filed a brief in this appeal and did not participate in oral argument.

to dismiss. We affirm in part and reverse in part the judgment of the trial court.

Our review of the record and, in particular, the court's order granting the plaintiff's motion to enforce the settlement agreement, reveals the following facts and procedural history. The defendant is in the business of selling heating, ventilation, and air conditioning (HVAC) equipment for use in residential and commercial construction projects. On or about November 19, 2019, the plaintiff contracted to purchase certain HVAC units from the defendant. The plaintiff alleged that the units he purchased from the defendant were defective and commenced the present action in July, 2021, by way of a complaint in which he alleged breach of contract and violations of the Uniform Commercial Code. On October 5, 2021, the defendant filed a request that the plaintiff revise his complaint, ultimately resulting in the operative complaint being filed on January 3, 2022. On January 28, 2022, the defendant filed a motion to dismiss premised on lack of subject matter jurisdiction due to a forum selection clause contained in the underlying contract.[2] On April 11, 2022, the court, in denying the defendant's motion to dismiss, noted that the forum selection clause implicated personal jurisdiction as opposed to a court's subject matter jurisdiction. The court denied the motion as untimely and because the defendant waived the right to file a motion to dismiss based on lack of personal jurisdiction when it filed the October 5, 2021 request to revise. See Practice Book § 10-7.

The plaintiff made various preliminary offers to settle the dispute and even attempted to reach a settlement

---

[2] The contract's forum selection clause states in relevant part: "Governing Law. This Agreement shall be governed by and construed in accordance with the laws of the State of Illinois, without giving effect to the conflict of laws principles thereof. . . . Disputes. Any dispute arising from this Agreement shall be resolved in the courts of the State of Illinois."

before he filed his initial complaint. The plaintiff's offers included, inter alia, his willingness to settle for $30,000 contingent upon his ability to keep the HVAC units and not provide receipts for costs incurred, $25,000 with the option for the defendant to take possession of the units, and $22,000 with no mention of contingencies. The defendant's counter offer expressed a willingness to reimburse the plaintiff for the cost of the units along with reasonable expenses incurred, conditioned upon the plaintiff providing copies of the expense receipts. These settlement efforts did not result in an agreement.

On August 16, 2022, the court set a date for a trial management conference and ordered the parties to be prepared to engage in settlement negotiations. The following day, on August 17, 2022, the defendant filed an offer of compromise with the court pursuant to General Statutes § 52-193 and Practice Book § 17-11, in which it offered "to settle the claims of the plaintiff . . . for the sum of . . . $11,000 . . . inclusive of any and all fees, costs and attorney's fees the plaintiff might claim." Between August 17 and 29, 2022, the parties engaged in continued email communications regarding the offer of compromise and a potential settlement agreement. On August 21, 2022, the plaintiff communicated that he agreed to settle for $11,000 and told the defendant's counsel to "[p]ut it together and I will file the withdrawal of action." The defendant's counsel thanked him and stated she would "get working on this and be back in touch soon"; one week later she apologized for the delay and stated that she would "get a draft settlement agreement to [him] for comment this week." The plaintiff thanked her for the response and stated that he "junked the [HVAC] equipment."

On September 20, 2022, three weeks after the last documented email communication, the defendant filed a withdrawal of the offer of compromise with the court. That same day, the plaintiff filed an objection to the

withdrawal of the offer of compromise and asked the court to compel the settlement, alleging that the offer had been accepted by email communication with the defendant's counsel on August 21, 2022, and that the plaintiff disposed of the equipment "in good faith" under the belief that they had reached a settlement. The defendant filed a reply to the plaintiff's objection to the withdrawal, stating, inter alia, that it believed the return of the equipment was a factor that had not yet been decided through the settlement negotiations.

On October 24, 2022, the court conducted a remote hearing regarding the withdrawal of the offer of compromise and the objection thereto. The court stated that it would treat the plaintiff's request to compel settlement as a motion to enforce a settlement agreement. The defendant's counsel indicated that there were verbal communications between the parties and that it was the defendant's desire and understanding that the equipment would be returned upon reaching a settlement. As a result, when the defendant learned that the plaintiff had disposed of the equipment, it withdrew its offer of compromise. The plaintiff acknowledged that there were discussions regarding returning the units when the settlement amount was double that which was ultimately offered. The plaintiff hypothesized that "either they screwed up, or . . . just forgot to say in the [offer] we want return of the units. They never said it." The court then confirmed with the defendant's counsel that there were no written communications between the parties indicating that the $11,000 offer was contingent on the return of the units.

On October 25, 2022, the court entered an order granting the plaintiff's motion to enforce the settlement agreement and further stated that the plaintiff's objection to the withdrawal of the offer of compromise was overruled as moot as a result of that order. The court found that "the defendant did not condition its offer to

settle the dispute for $11,000 upon the return of the equipment. The defendant's email communications confirming its agreement to settle the action for $11,000 are not conditioned upon the return of the equipment. Similarly, the offer of compromise simply offers to settle the matter for $11,000, with no conditions. Even after the plaintiff advised the defendant's counsel in his August 29 email that he had 'junked the equipment' the defendant never responded and told the plaintiff that he had somehow breached the settlement agreement."

The defendant now appeals from the judgment granting the plaintiff's motion to enforce the settlement agreement and denying its motion to dismiss.

I

On appeal, the defendant claims that the parties did not reach an enforceable settlement agreement. More specifically, the defendant contends that there was no " 'meeting of the minds' between the parties" because the defendant understood that the equipment would be returned upon settlement, while the plaintiff did not have the same understanding. We agree.[3]

As an initial matter, we note that there is more than one appropriate pathway for parties to settle a legal claim. Here, the parties concurrently engaged in two distinct, permissible methods: out-of-court settlement negotiations with the goal of reaching a legally cognizable settlement agreement, and an offer of compromise governed by statutory requirements and the rules of practice. Although "the purpose of the offer of compromise statute [is the] promotion of pretrial settlement"; *Larmel* v. *Metro North Commuter Railroad Co.*, 200

---

[3] The defendant alternatively argues that the parties "did not clearly and unambiguously agree to settle the dispute" and that the court's failure to hold an evidentiary hearing constituted reversible error. Because we conclude that there was no meeting of the minds between the parties, we do not address those alternative claims.

Conn. App. 660, 678, 240 A.3d 1056 (2020), aff'd, 341 Conn. 332, 267 A.3d 162 (2021); the process is still governed by various statutes with their attendant timelines and potential penalty.[4] Here, the defendant filed a valid offer of compromise in accordance with § 52-193 and Practice Book § 17-11. However, the plaintiff did not satisfy the requirements for acceptance detailed in General Statutes § 52-194 and Practice Book § 17-12 before the defendant filed a withdrawal of its offer. Because the plaintiff failed to file a written acceptance of the offer of compromise as is required by statute, and because there was no issue raised on appeal regarding the court's determination that the objection to the withdrawal of the offer of compromise was moot, our consideration of the issues is not governed by the statutory framework that controls an offer of compromise. Rather, we consider only whether the court properly granted the plaintiff's motion to enforce a settlement agreement.

Whether an enforceable settlement agreement has been reached is a matter of law over which we exercise plenary review. Here, "[t]he issue on appeal is whether the communications between the parties constituted an enforceable settlement agreement. . . . Because the [defendant challenges] the trial court's legal conclusion that the [settlement] agreement was summarily enforceable, we must determine whether that conclusion is legally and logically correct and whether [it finds] support in the facts set out in the memorandum of

_____

[4] A defendant is permitted to file an "offer of compromise" with the court for a "sum certain"; General Statutes § 52-193; after which the plaintiff will have sixty days to file a written acceptance of the offer. General Statutes § 52-194. If a plaintiff fails to file the written acceptance prior to the sixty day deadline, then "the offer shall be deemed to be withdrawn and shall not be given in evidence." General Statutes § 52-195 (a). Section 52-195 (b) imposes a penalty on a plaintiff who fails to accept the offer of compromise but ultimately recovers an amount equal or less than the initial offer. These statutory provisions are echoed in Practice Book §§ 17-11 through 17-13.

decision. . . . In addition, to the extent that the [defendant's] claim implicates the court's factual findings, our review is limited to deciding whether such findings were clearly erroneous. . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. . . . In making this determination, every reasonable presumption must be given in favor of the trial court's ruling." (Internal quotation marks omitted.) *Wittman* v. *Intense Movers, Inc.*, 202 Conn. App. 87, 98, 245 A.3d 479, cert. denied, 336 Conn. 918, 245 A.3d 803 (2021).

"Whether a meeting of the minds has occurred is a factual determination." *M.J. Daley & Sons, Inc.* v. *West Haven*, 66 Conn. App. 41, 48, 783 A.2d 1138, cert. denied, 258 Conn. 944, 786 A.2d 430 (2001). To resolve this issue, we apply the clearly erroneous standard of review.

"A settlement agreement is a contract among the parties. . . . In order to form a binding and enforceable contract, there must exist an offer and an acceptance based on a mutual understanding by the parties. . . . The mutual understanding must manifest itself by a mutual assent between the parties. . . . In other words, [i]n order for an enforceable contract to exist, the court must find that the parties' minds had truly met. . . . If there has been a misunderstanding between the parties, or a misapprehension by one or both so that their minds have never met, no contract has been entered into by them and the court will not make for them a contract which they themselves did not make. . . . Meeting of the minds is defined as mutual agreement and assent of two parties to contract to substance and terms. It is an agreement reached by the parties to a contract and expressed therein, or as the equivalent

of mutual assent or mutual obligation. . . . This definition refers to fundamental misunderstandings between the parties as to what are the essential elements or subjects of the contract." (Citations omitted; internal quotation marks omitted.) *Kinity* v. *US Bancorp*, 212 Conn. App. 791, 824–25, 277 A.3d 200 (2022).

The requirement that the parties have a "meeting of the minds" is "consistent with the objective theory of contracts, that [t]he making of a contract does not depend upon the secret intention of a party but upon the intention manifested by his words or acts, and on these the other party has a right to proceed." (Internal quotation marks omitted.) *Connecticut Light & Power Co.* v. *Proctor*, 324 Conn. 245, 267–68, 152 A.3d 470 (2016). Therefore, the proper inquiry is "whether a reasonable person in the defendant's position" would have relied on the plaintiff's words and actions to proceed on the belief that possession of the equipment was an outstanding term of a settlement agreement that had not yet been finalized. Id., 268.

A careful review of the record reveals that the parties engaged in extensive, ongoing, out-of-court settlement negotiations in their attempt to reach a finalized settlement agreement. Both parties acknowledge that these negotiations took place in oral and written form. There are two documented offers made by the plaintiff to the defendant that involved possession of the equipment, both of which were communicated through email.[5] The first of these, on May 9, 2022, proposed that the defendant pay $30,000 and allow the plaintiff to keep the

---

[5] The record indicates that verbal communications and discussions also took place regarding possession of the HVAC units. The defendant stated that the parties "discussed verbally the return of the units on a number of occasions and [that the defendant] had . . . conveyed . . . [the] desire to have the units returned, if [they] were to reach a settlement." The plaintiff stated that these discussions took place when settlement amounts were "double" the monetary amount ultimately agreed upon.

units. The second proposal was communicated on July 29, 2022, suggesting settlement for $25,000 and allowing the defendant to "leave or take the units . . . . Let me know . . . ." On August 17, 2022, the defendant filed the offer of compromise with the court, then the same day communicated that fact to the plaintiff by email. The plaintiff countered that he wanted the defendant to "double" the offer, which was a continuation of the out-of-court settlement negotiations. After several additional email exchanges, the plaintiff stated: "I will take the [$11,000] and move on. Put it together and I will file the withdrawal of action." The defendant's counsel acknowledged the email, stated that she "will get working on this," and one week later communicated that she would "get a draft settlement agreement to you for comment this week." Minutes after the defendant's counsel sent that email, the plaintiff replied stating that he "junked the equipment."

In its memorandum of decision, the court stated that "the defendant did not condition its offer to settle the dispute for $11,000 upon the return of the equipment." However, when viewing the totality of the evidence before the court, it is clear that the parties were engaged in ongoing negotiations regarding the terms of the settlement agreement, and both parties anticipated but never finalized that agreement. Specifically, the plaintiff created an outstanding offer that held open the term of possession of the HVAC units until further direction was given by the defendant by stating that "[t]hey can leave or take the units . . . . Let me know . . . ." There is nothing in the record to indicate that the plaintiff revoked this offer prior to unilaterally disposing of the units and notifying the defendant of his action thirty days after agreeing to hold open that term. Further, it is clear that both parties anticipated memorializing the agreement in some type of writing,[6] but the plaintiff

---

[6] The record indicates that, when agreeing to accept the defendant's $11,000 offer, the plaintiff asked the defendant's counsel to "[p]ut it together

disposed of the units prior to the agreement being drafted.

In sum, the parties did not reach a binding and enforceable contract because, on the basis of the record before us, the terms of the agreement had not yet been finalized. The agreement was still in the process of being drafted and had not yet been completed, memorialized, or signed by either party. As a result of the plaintiff's creation of an outstanding offer regarding the possession of the HVAC equipment, and the lack of evidence resolving that offer, the parties did not reach a meeting of the minds. The court's finding that a summarily enforceable agreement had been reached was clearly erroneous.

## II

The defendant next claims that the court abused its discretion in declining to enforce a forum selection clause after it determined that the defendant's motion to dismiss based on a lack of personal jurisdiction was both untimely and that the defendant had waived its ability to contest personal jurisdiction. The defendant does not challenge the court's rulings concerning timeliness or waiver. Rather, for the first time on appeal, it argues that the court should have conducted an analysis to determine whether the forum selection clause contained in the parties' contract was reasonable and gave effect to the parties' expectations prior to denying the motion.

"It is well established that an appellate court is under no obligation to consider a claim that is not distinctly

. . . ." The defendant's counsel stated she would "get working on this and [would] be back in touch soon," then later stated she would "get a draft settlement agreement to you for comment this week." Taken together, these email exchanges indicate that both parties anticipated a writing to memorialize a settlement agreement.

raised at the trial level. . . . The requirement that [a] claim be raised distinctly means that it must be so stated as to bring to the attention of the court the *precise* matter on which its decision is being asked. . . . The reason for the rule is obvious: to permit a party to raise a claim on appeal that has not been raised at trial— after it is too late for the trial court or the opposing party to address the claim—would encourage trial by ambuscade, which is unfair to both the trial court and the opposing party." (Emphasis in original; internal quotation marks omitted.) *Downing* v. *Dragone*, 216 Conn. App. 306, 327, 285 A.3d 59 (2022), cert. denied, 346 Conn. 903, 287 A.3d 601 (2023).

The record reflects that the defendant's motion to dismiss was premised on its assertion that the court lacked subject matter jurisdiction due to the forum selection clause in the contract between the parties. In its order denying the motion to dismiss, the court stated that the "forum selection clause in the parties' agreement does not, as the defendant suggests, implicate the court's subject matter jurisdiction, but rather lack of personal jurisdiction." The court then addressed the defendant's jurisdictional argument, ultimately denying the motion because the defendant "waived . . . personal jurisdiction by filing its request to revise . . . and because the motion is untimely."

Because the defendant failed to preserve its claim on appeal before the trial court, we decline to review it.

The judgment is reversed only with respect to the granting of the motion to enforce the settlement agreement and the case is remanded for further proceedings in accordance with this opinion; the judgment is affirmed in all other respects.

In this opinion the other judges concurred.