******************************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

## CYNTHIA GIGLIO *v.* JANINE ARDOHAIN ET AL.
## (AC 46379)

Elgo, Suarez and Seeley, Js.

*Syllabus*

The plaintiff, who owned real property adjacent to that owned by the defendant A and on which the defendant M resided, appealed from the trial court's judgment, rendered in favor of the defendants, A, M, and M's business entity, E Co. The plaintiff claimed, inter alia, that the court improperly determined that the defendants' conduct had not created a private nuisance by unreasonably interfering with her use and enjoyment of her property. *Held*:

The trial court's conclusion that the plaintiff had failed to establish her claim of private nuisance was not clearly erroneous, as the court considered all relevant factors in determining that intermittent noise from vehicles at M's residence and smoke from a woodstove there, which occasionally drifted toward the plaintiff's home, did not constitute an unreasonable interference with the plaintiff's use and enjoyment of her property.

The trial court did not abuse its discretion in denying the plaintiff's request for injunctive relief as part of her claim for private enforcement of city zoning regulations against the defendants, the court having found that the plaintiff failed to demonstrate a sufficient causal connection between her claims of harm and the defendants' conduct.

Argued November 14, 2024—officially released July 15, 2025

*Procedural History*

Action to recover damages for, inter alia, nuisance, and for other relief, brought to the Superior Court in the judicial district of Stamford-Norwalk, where American Marine Electronics, LLC, was added as a defendant; thereafter, the case was tried to the court, *Kavanewsky, J.*; judgment for the defendants, from which the plaintiff appealed to this court. *Affirmed*.

*Robert D. Russo*, for the appellant (plaintiff).

*Igor G. Kuperman* and *Stephan E. Seeger*, for the appellees (defendants).

*Opinion*

ELGO, J. The plaintiff, Cynthia Giglio, appeals from the judgment of the trial court rendered in favor of the defendants, Janine Ardohain, Sean McAleer, and American Marine Electronics, LLC (AME).[1] On appeal, the plaintiff contends that the court improperly (1) determined that the defendants' conduct did not constitute a private nuisance and (2) declined to grant injunctive relief due to the defendants' violation of certain municipal zoning regulations. We affirm the judgment of the trial court.

The following facts, either as found by the trial court or as undisputed in the record, and procedural history are relevant to our resolution of this appeal. At all relevant times, the plaintiff owned real property known as 11 Rising Road in Norwalk, which is adjacent to the property located at 9 Rising Road owned by Ardohain and occupied by McAleer.[2] In December, 2018, the plaintiff commenced the present action against the defendants. Her operative second amended complaint contained two counts seeking monetary damages and injunctive relief as to each count. The first count, sounding in private nuisance, alleged that smoke from a woodstove installed in a garage on the 9 Rising Road property, as well as noise created by various trucks and commercial activity, created a private nuisance that interfered with the plaintiff's ability to use and enjoy her property. The second count, in which the plaintiff sought to

---

[1] Ardohain owns certain real property at 9 Rising Road in Norwalk. Her grandson, McAleer, resides at that property. McAleer operates and is the sole member of AME. We refer to the defendants collectively throughout this opinion, except when necessary to describe the actions of specific persons or entities.

[2] The plaintiff purchased the property at 11 Rising Road in 2007. In 2017, Ardohain purchased the adjacent property for the purpose of providing a home for McAleer, her grandson. McAleer has been the sole occupant of the property since that time. Both of the subject properties are zoned for residential use.

enforce certain city of Norwalk (city) zoning regulations, alleged that McAleer's activity in operating a commercial business on the 9 Rising Road property and installing a noncompliant woodstove constituted a violation of the regulations that necessitated injunctive relief and damages.

A court trial was held over six days in 2021 and 2022, at which the plaintiff, Ardohain, and McAleer testified.[3] The plaintiff's testimony spanned the first four days of the trial. The plaintiff testified that she first complained about the woodstove on December 31, 2017, and first smelled smoke in her house on November 15, 2018. The plaintiff claimed that "significant amounts" of smoke entered her home as a result of the operation of the woodstove on the 9 Rising Road property, causing "physical harm," including respiratory issues that required medical treatment. The plaintiff testified that she was forced to rent a motel room at times to avoid the smoke. The plaintiff also testified that she has "long-standing allergic asthma" and is highly allergic to dust, smoke, and mold. The plaintiff further testified that the last time McAleer used the woodstove was in March, 2019. In addition, the plaintiff testified as to the noise created by McAleer's vehicles and the alleged commercial activity taking place at the 9 Rising Road property.[4] More than fifty exhibits were admitted into evidence,

[3] We note that the plaintiff's real estate appraiser testified as well. The trial court did not credit the appraiser's testimony as to the impact of the defendants' conduct on the value of the plaintiff's property, and the plaintiff does not challenge that factual finding on appeal.

[4] In her testimony, the plaintiff acknowledged that noise from machine tools on the 9 Rising Road property had "not been happening" recently. The trial court was presented with evidence that the city had issued Ardohain a citation for zoning violations on the 9 Rising Road property in June, 2018, due to the storage of a commercial vehicle on the property. The court found that the noise related to business equipment and the repairing of vehicles "eventually ceased in response to zoning enforcement activity against [McAleer]." The noise created by McAleer's vehicle, which is the result of his activity as a volunteer firefighter, is the only noise at issue in this appeal.

including medical records, photographs and video recordings of the smoke from the woodstove, and photographs and video recordings of McAleer's various vehicles.

McAleer testified that he is a volunteer officer with two local fire departments and that he responds to calls at all times of the day and night. McAleer further testified that he does not use the woodstove because he wants to be a good neighbor. McAleer also testified that, after he learned about the plaintiff's being bothered by the noise his truck created, he spent $1000 to add mufflers to the exhaust system.

In its memorandum of decision, the trial court concluded that the plaintiff had not sustained her burden to prove "that [McAleer's] activities or conduct were unreasonable." As to the private nuisance claim, the court found that any interference with the plaintiff's use and enjoyment of her property was such that it was not in excess of " 'what a normal person of ordinary habits and sensibilities' " would have been able to endure. The court also concluded that the plaintiff could not sustain her private zoning enforcement claim because she had not shown any "credible, true harm" resulting from any zoning violations. The court determined that, "while the plaintiff testified and offered evidence at great length concerning many maladies which she claimed to have suffered because of the violations, the court does not find such testimony and evidence to be reliable and believable. There is a lack of sufficient causal connection between any violations and the plaintiff's medical conditions." The court thus rendered judgment in favor of the defendants on both counts, and this appeal followed.[5]

---

[5] We note that the plaintiff filed a motion for articulation during the pendency of this appeal. The trial court denied that motion, and the plaintiff sought our review of that denial. We subsequently granted the plaintiff's request for review of that denial but denied the relief requested.

I

The plaintiff first claims that the trial court erred in concluding that the defendants' conduct did not constitute a private nuisance. The plaintiff argues that the evidence adduced at trial established that McAleer's woodstove, which was installed in a garage at the rear of the 9 Rising Road property and adjacent to the plaintiff's home, produced excessive smoke that invaded her home, which made it impossible for her to sleep in her bedroom and exacerbated her environmental allergies. She alleges that the smoke had reached such an intensity that she was admitted to the emergency department of Norwalk Hospital for acute bronchospasm, and that, at times, the smoke also caused her to flee her home and rent a motel room. The plaintiff also argues that the operation of commercial vehicles on the 9 Rising Road property created noise that disturbs her sleep.[6] The defendants counter that the court properly weighed all the relevant factors in denying the plaintiff's claim, and that the plaintiff simply "disagrees with the trial court's ultimate conclusions as to the reasonableness of [McAleer's] use and the extent of harm (or lack thereof) suffered by the plaintiff." We agree with the defendants.

The following additional facts are relevant to this claim. The trial court found that the plaintiff had established that the smoke from the woodstove as well as the noise from the "conditions or activities taking place on the defendants' premises" caused "some measure of interference with the plaintiff's use and enjoyment of her own property." The court then considered whether and to what extent such interference with the plaintiff's use and enjoyment of her property was unreasonable. The court found that, although McAleer was

---

[6] The plaintiff alleges that, by her estimate, she has been awakened hundreds of times since McAleer moved into the house next door in 2017 as a result of his use of his vehicles when responding to fire alarms and alerts.

using the woodstove without a permit "at first," he "promptly complied with zoning enforcement [by the city] to remedy the condition." The court also found that, as a result of prevailing wind conditions, smoke from the woodstove would occasionally drift toward the plaintiff's property. The court noted that this drift was "hardly a foreseeable event" and was not within the defendants' control. The smoke was not an intensive, pervasive and unsuitable intrusion into the plaintiff's property, especially given the character of the neighborhood."

With respect to the noises McAleer's vehicles created, the trial court found that these were "intermittent bursts of noises" that would "primarily occur when [McAleer] responded to his volunteer firefighter duties . . . ."[7] Although the court acknowledged that these incidents, which were caused by McAleer's "hurried exits" from the driveway, occurred at "odd hours of the day and night," it concluded, nonetheless, that McAleer had not acted in "any manner calculated to vex or unduly annoy the plaintiff." The court further found that the noise from commercial activity had ceased due to the city's zoning enforcement. See footnote 4 of this opinion. The court concluded that, after considering all relevant factors as to the claim of private nuisance, the plaintiff, who was "acutely" sensitive, had not sustained her burden of proof to demonstrate that the defendants' activities or conduct were unreasonable.[8] Due to the fact that

[7] The trial court also found that the noise arising from the fact that McAleer would entertain guests at his home was "not of any persistent, irregular or excessive character to deem it unreasonable." The court, similarly, noted that noise related to the repair of vehicles and/or caused by equipment used for commercial activity was cause for concern, but "that noise eventually ceased in response to zoning enforcement activity against [McAleer]."

[8] We note that the trial court also found that the plaintiff had not sufficiently demonstrated harm such that she could seek injunctive relief through private zoning enforcement—a finding that clearly is related to her private nuisance claim as well. See part II of this opinion.

the plaintiff had not met her burden of establishing that she had been subjected to an unreasonable interference with the use and enjoyment of her property, the court rendered judgment in favor of the defendants on count one.

We next set forth the legal principles and standard of review relevant to our resolution of this claim. "A private nuisance is a nontrespassory invasion of another's interest in the private use and enjoyment of land." 4 Restatement (Second), Torts § 821D, p. 100 (1979). The law of private nuisance springs from the general principle that "[i]t is the duty of every person to make a reasonable use of his [or her] own property so as to occasion no unnecessary damage or annoyance to his neighbor." *Nailor* v. *C. W. Blakeslee & Sons, Inc.*, 117 Conn. 241, 245, 167 A. 548 (1933). "Determining unreasonableness is essentially a weighing process, involving a comparative evaluation of conflicting interests . . . . Unreasonableness cannot be determined in the abstract, but, rather, must be judged under the circumstances of the particular case." (Citations omitted; internal quotation marks omitted.) *Pestey* v. *Cushman*, 259 Conn. 345, 352–53, 788 A.2d 496 (2002).

To recover damages in a private nuisance cause of action, a plaintiff must demonstrate that a defendant's conduct was the proximate cause of an unreasonable interference with the plaintiff's use and enjoyment of his or her property. Id., 361. Such interference may be either intentional or the result of a defendant's negligence. Id.; see also *Gregorio* v. *Naugatuck*, 89 Conn. App. 147, 151–52 n.8, 871 A.2d 1087 (2005) ("[A] plaintiff must show that the defendant's conduct was the proximate cause of an unreasonable interference with the plaintiff's use and enjoyment of property. The interference may be intentional or negligent, but it must be unreasonable."). "Ultimately, the question of reasonableness is whether the interference is beyond that

which the plaintiff should bear, under all of the circumstances of the particular case, without being compensated." *Pestey* v. *Cushman*, supra, 259 Conn. 362.

"Whether the interference is unreasonable depends upon a balancing of the interests involved under the circumstances of each individual case. In balancing the interests, the fact finder must take into consideration all relevant factors, including the nature of both the interfering use and the use and enjoyment invaded, the nature, extent and duration of the interference, the suitability for the locality of both the interfering conduct and the particular use and enjoyment invaded, whether the defendant is taking all feasible precautions to avoid any unnecessary interference with the plaintiff's use and enjoyment of his or her property, and any other factors that the fact finder deems relevant to the question of whether the interference is unreasonable. No one factor should dominate this balancing of interests; all relevant factors must be considered in determining whether the interference is unreasonable."[9] Id., 361.

---

[9] The plaintiff, for the first time on appeal, argues that McAleer's status as a licensee occupying the property at 9 Rising Road is a " 'relevant factor' " in determining whether his interference with her use and enjoyment of her property was reasonable because, as an occupant at will, "[h]e has no interest in the property he occupies." This argument was not presented to the trial court, and the defendants did not have an opportunity to address it before the trial court. Nonetheless, citing to authority from other jurisdictions, the plaintiff now argues that, because a licensee's interest is slight, any balancing of the interests should weigh in favor of any opposing party who is an actual owner of property, meaning that "[a]ny infringement [on the plaintiff's enjoyment] should be actionable." Although we acknowledge that the plaintiff raised the issue of McAleer's status as a licensee in her posttrial reply brief, she made this argument *only* in response to the defendants' argument that Ardohain had no liability for McAleer's actions, not with respect to the relevant analysis undertaken by the court to determine whether the interference created by McAleer's actions was unreasonable. Under these circumstances, we decline to address this argument, as it would constitute trial by ambuscade. See *Martin* v. *Todd Arthurs Co.*, 225 Conn. App. 844, 854–55, 317 A.3d 98 (2024) ("It is well established that an appellate court is under no obligation to consider a claim that is not distinctly raised at the trial level. . . . The requirement that [a] claim be raised distinctly means that it must be so stated as to bring to the attention of the court the

Further, "[t]he determination of whether the interference is unreasonable should be made in light of the fact that some level of interference is inherent in modern society. There are few, if any, places remaining where an individual may rest assured that he [or she] will be able to use and enjoy his [or her] property free from all interference. Accordingly, the interference *must be substantial* to be unreasonable." (Emphasis added.) Id. Moreover, "while the reasonableness of a defendant's conduct is a factor in determining whether an interference is unreasonable, it is *not* an independent element that must be proven in order to prevail in all private nuisance causes of action. The inquiry is cast more appropriately as whether the defendant's conduct unreasonably interfered with the plaintiff's use and enjoyment of his or her land rather than whether the defendant's conduct was itself unreasonable." (Emphasis in original.) Id., 360.

"Whether an interference is unreasonable is a question of fact for the fact finder." *Boyne* v. *Glastonbury*, 110 Conn. App. 591, 604, 955 A.2d 645, cert. denied, 289 Conn. 947, 959 A.2d 1011 (2008). "The trier of fact's determination of a question of fact will not be overturned unless it is clearly erroneous." *Berube* v. *Nagle*, 81 Conn. App. 681, 696, 841 A.2d 724 (2004). "A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. . . . Under the clearly erroneous standard of review, a finding of fact must stand if, on the basis of the evidence before

*precise* matter on which its decision is being asked. . . . The reason for this rule is obvious: to permit a party to raise a claim on appeal that has not been raised at trial—after it is too late for the trial court or the opposing party to address the claim—would encourage trial by ambuscade, which is unfair to both the trial court and the opposing party." (Emphasis in original; internal quotation marks omitted.)).

the court and the reasonable inferences to be drawn from that evidence, a trier of fact reasonably could have found as it did. . . . In reviewing factual findings, [w]e do not examine the record to determine whether the [court] could have reached a conclusion other than the one reached. . . . Instead, we make every reasonable presumption . . . in favor of the trial court's ruling." (Citation omitted; internal quotation marks omitted.) *Circulent, Inc.* v. *Hatch & Bailey Co.*, 217 Conn. App. 622, 630, 289 A.3d 609 (2023).

The plaintiff argues that the trial court erroneously focused on the foreseeability of the fact that smoke from McAleer's woodstove would invade her property.[10] According to the plaintiff's understanding of the court's reasoning, the court put undue emphasis on McAleer's intentions, as well as the foreseeability of the impact of his actions on the plaintiff. The plaintiff argues that the concepts of unreasonable use and unreasonable interference are distinct, in that a reasonable use can, nonetheless, constitute a private nuisance when it unreasonably interferes with the use or enjoyment of another person's property. In essence, the plaintiff contends that the court elided the distinction, resulting in factual findings that were clearly erroneous.

We conclude that the trial court's finding that the plaintiff had not established her claim of private nuisance was not clearly erroneous. The court considered all the relevant factors, including the nature of the interfering use as well as the use and enjoyment of her

---

[10] More specifically, the plaintiff argues that, because the "primary focus" in a private nuisance action is on the "impact" on the affected property, "logic leads to the conclusion that foreseeability should not be a 'relevant factor.'" The defendants respond that "[t]he relevant inquiry before the court was whether it was foreseeable that the smoke would be blown in the direction of the plaintiff's home" and that the court's commentary regarding the foreseeability of the wind's effect on the smoke emanating from the woodstove was "a recognition that [McAleer] was not intentionally trying to 'smoke out' the plaintiff from her home."

property that was being invaded. As the court noted, the woodstove was a permitted use, and the prevailing wind patterns were out of the defendants' control. The plaintiff was also in control of the location of her bedroom relative to the source of the smoke. The court also considered the duration as well as the suitability of the defendants' conduct for the "character" of the residential neighborhood, noting that the smoke would "occasionally" drift toward the plaintiff's residence and that the noise was "intermittent . . . ."

The trial court further considered whether McAleer took all feasible precautions to avoid any unnecessary interference with the plaintiff's use and enjoyment of her property. The court's observation that "prevailing wind conditions" caused the smoke from the woodstove to "occasionally drift" toward the plaintiff's property is "hardly a foreseeable event" related to its understanding of the character of the residential neighborhood and that McAleer was not able to take any further, feasible precaution to ensure that smoke would not drift toward the plaintiff's property. Although foreseeability is not an element of a cause of action for private nuisance, we do not agree with the plaintiff that the court's mere use of the word "foreseeable" was improper under the circumstances. We conclude that the court's reference to foreseeability, rather than being an improper factor, was simply part and parcel of its overall deliberation in balancing the equities.

Moreover, the trial court considered the applicable zoning ordinances—as well as McAleer's violations of those ordinances—in determining that there was no private nuisance. The court noted that, although the woodstove had been installed without the required permit and McAleer "had not installed some features necessary" to obtain the required permit, he had nonetheless "promptly complied with [the city's] zoning enforce-

ment orders to remedy the condition." The court similarly noted that, although it was "concerned about noise complaints" resulting from McAleer's actions in repairing vehicles or other business equipment on the property, which was "not a permitted use in [the] zone," that noise eventually ceased in response to the city's zoning enforcement.[11] See footnote 4 of this opinion.

Although the trial court did find that there was some interference with the plaintiff's use and enjoyment of

---

[11] The plaintiff devotes nearly ten pages of her principal appellate brief in support of her argument that the woodstove "enlarged" or "changed" the use of the garage at the 9 Rising Road property, in violation of applicable zoning regulations. In attempting to prove these violations, the plaintiff also filed a motion asking this court to take judicial notice of various local zoning regulations. According to the plaintiff, "use and structure zoning violations should be as a matter of law (per se) unreasonable (private nuisance)." The plaintiff also argues that, even if we do not accept the theory that a zoning violation constitutes per se a private nuisance, the existence of a zoning violation should "reduce the [plaintiff's] burden for establishing unreasonable interference" in that "mere annoyance, discomfort and agitation should suffice."

This court has firmly rejected the theory that zoning violations constitute per se private nuisance. See *Day* v. *Perkins Properties, LLC*, 190 Conn. App. 33, 34, 209 A.3d 718 (2019). The proper emphasis—in any analysis of a claim sounding in private nuisance—is on the *interference* that the conduct creates, rather than the nature of the activity itself. To hold that zoning violations constitute per se private nuisance would upend our Supreme Court's determination that the proper emphasis in these cases is on interference rather than conduct—something we cannot do. Private nuisance "is concerned with conduct that interferes with an individual's private right to the use and enjoyment of his or her land." *Pestey* v. *Cushman*, supra, 259 Conn. 357. A court may consider, however, local zoning regulations, along with other factors, in determining whether a private nuisance exists. See, e.g., *Cummings* v. *Tripp*, 204 Conn. 67, 79, 527 A.2d 230 (1987) ("[i]n deciding whether a nuisance exists, a court will often find it necessary to interpret the pertinent zoning regulations because the nuisance issue is intertwined with the lawfulness of the conduct involved"). We, therefore, also decline the plaintiff's invitation to conclude that "mere annoyance, discomfort and agitation" should suffice, in *any* private nuisance action, to demonstrate unreasonable interference. Put differently, the mere existence of a zoning violation should not reduce the plaintiff's burden of proof in an action sounding in private nuisance—to demonstrate a substantial interference in the use and enjoyment of the plaintiff's property.

her property, it did not find that interference to be substantial enough to warrant an award of damages. Put differently, the court concluded that the interference with the plaintiff's use and enjoyment of her property caused by the defendants' conduct was not unreasonable. Therefore, because the record before us contains ample support for this finding by the court, it is not clearly erroneous. The plaintiff's assertion that the court erred in concluding that the defendants' conduct did not constitute a private nuisance must therefore fail.

## II

The plaintiff's second claim is that the trial court improperly failed to grant her injunctive relief to privately enforce certain zoning regulations due to the zoning violations created by the operation of the woodstove on the 9 Rising Road property as well as the noise allegedly created by ongoing commercial deliveries.[12] Although the woodstove was originally installed without the required permit from the city, the Norwalk Building Department issued a certificate of compliance in November, 2018 (almost one year after the installation of the woodstove), which approved the use of the woodstove in the defendants' "workshop" and specified that the structure was not to be used as a garage. Nevertheless, the plaintiff claims that she is entitled to injunctive relief because this is an expansion of the nonconforming structure and, hence, a zoning violation. The

---

[12] The plaintiff's complaint alleged that the city's inaction had caused her to suffer irreparable damage and loss which could not be measured in damages. She sought an order enforcing numerous zoning regulations related to the following alleged activity on the part of the defendants and the city: (1) the storage of noncompliant commercial vehicles on the property; (2) the operation of an illegal business on the property; (3) the operation of a boat marina on the property; (4) the operation of a woodstove installed in noncompliance with the manufacturer's installation instructions; (5) the Norwalk Building Department's improper issuance of the certificate of compliance granted with respect to the woodstove; (6) the classification of the structure where the woodstove is installed as a "workshop" without the

defendants contend that, regardless of whether there were zoning violations, the plaintiff never demonstrated harm such that relief was warranted. According to the defendants, the court properly exercised its discretion in denying the plaintiff's demand for injunctive relief, in that the court did not credit the plaintiff's testimony regarding the harm she allegedly suffered. We agree with the defendants.

The following legal principles guide our analysis. "The issuance of an injunction is the exercise of an extraordinary power which rests within the sound discretion of the court, and the justiciable interest which entitles one to seek redress in an action for injunctive relief is . . . founded on the imminence of substantial and irreparable injury." (Internal quotation marks omitted.) *Karls* v. *Alexandra Realty Corp.*, 179 Conn. 390, 401, 426 A.2d 784 (1980). To be granted injunctive relief, the plaintiff must establish "(1) that injury from failure to grant an injunction is imminent; (2) the injury is substantial; (3) the injury is irreparable and there is a substantial probability that unless an injunction is issued the party seeking it will suffer irreparable harm." (Internal quotation marks omitted.) *Steroco, Inc.* v. *Szymanski*, 166 Conn. App. 75, 89, 140 A.3d 1014 (2016). Moreover, "[e]ven where the danger of irreparable injury is shown, the granting of an injunction is not mandatory but within the sound discretion of the court. Until it is shown that the court's discretion was abused, there can be no reversal of the court's action in denying the injunction." *Koepper* v. *Emanuele*, 164 Conn. 175, 178, 319 A.2d 411 (1972).

The trial court, in its memorandum of decision, grounded its rejection of the plaintiff's claim on her failure to demonstrate substantial and irreparable harm.

proper exemption having been granted; and (7) the alteration of the nonconforming garage structure via the installation of the woodstove.

The court found: "[T]he plaintiff has not shown any credible, true harm as a result of any violations. . . . [W]hile the plaintiff testified and offered evidence at great length concerning many maladies which she claimed to have suffered because of the violations, the court does not find such testimony and evidence to be reliable and believable. There is a lack of sufficient causal connection between any violations and the plaintiff's medical conditions."[13] The court also did not credit the plaintiff's evidence as to the diminution of the value of her property allegedly caused by the defendants' activities. In so doing, the court concluded that, even if zoning violations existed on the 9 Rising Road property, the plaintiff had not satisfied her burden of establishing the requisite harm to maintain a private zoning enforcement action against the defendants.[14]

[13] We note that the plaintiff argues that "[t]he court erred when it ruled that [the plaintiff's] . . . use and enjoyment of her property and personal well-being were materially not damaged, compromised, nor invaded by McAleer's conduct." According to the plaintiff, there "is no support in the evidence for that finding . . . ." The plaintiff, who bears the burden of proof, testified and introduced medical records in support of her claim that she suffered harm. The court heard her testimony over four days and did not find it to be credible as to the issue of causation. The plaintiff's argument that the record does not support the court's finding that her testimony was not credible is therefore misplaced. We reiterate "what has become a tired refrain: Because it is the sole province of the trier of fact to assess the credibility of witnesses, it is not our role to second-guess such credibility determinations." (Internal quotation marks omitted.) *Downing* v. *Dragone*, 216 Conn. App. 306, 333, 285 A.3d 59 (2022), cert. denied, 346 Conn. 903, 287 A.3d 601 (2023).

[14] We note that the trial court also considered that the plaintiff had notified the appropriate city zoning officials, who substantiated some of her complaints and took enforcement action against the defendants. A plaintiff, however, is not required to seek enforcement by proper authorities before commencing an action to privately enforce zoning regulations. As the court noted correctly, private zoning enforcement actions are an exception to the doctrine of administrative exhaustion. This court has observed, "property owners specifically and materially damaged by the violation of zoning regulations may bring private zoning enforcement actions directly to the Superior Court, without first applying to municipal zoning authorities, as an exception to the exhaustion of administrative remedies doctrine." *Reichenbach* v. *Kraska Enterprises, LLC*, 105 Conn. App. 461, 468, 938 A.2d 1238 (2008).

On our review of the record, we conclude that the trial court did not abuse its discretion in denying the plaintiff's request for injunctive relief. As stated previously in this opinion, the issuance of an injunction is the exercise of extraordinary power. In the present case, the court found that the plaintiff had failed to demonstrate that she had suffered "any credible, true harm as a result of any [zoning] violations." Given these factual findings, which are supported by evidence in the record, we conclude that the court properly determined that the plaintiff has failed to demonstrate a sufficient causal connection between her claims of harm, including her medical conditions, and the defendants' conduct. The court, therefore, did not abuse its discretion in denying the plaintiff's request for injunctive relief.

The judgment is affirmed.

In this opinion the other judges concurred.

---

The reason for this exception to the doctrine of administrative exhaustion, which grants courts subject matter jurisdiction to hear private zoning enforcement claims, is precisely because, where specific and material harm is being perpetrated upon a party, that party should be able to seek equitable relief. See, e.g., *Cummings* v. *Tripp*, 204 Conn. 67, 76, 527 A.2d 230 (1987) (concluding that subject matter jurisdiction existed where administrative remedies had not been exhausted but that such exception requires "the necessity for clear and precise allegations of specific and material claims of damage in order to establish the threshold requirement for this exception to the exhaustion doctrine").